## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 1:21-cr-00293 |
| | ) | MJ No. 1:21-mj-04066 |
| Plaintiff, | ) | |
| | ) | Judge J. Philip Calabrese |
| v. | ) | |
| | ) | |
| RONALD BUCHANAN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPINION AND ORDER

The United States appeals the decision of the Magistrate Judge denying detention of Ronald Buchanan.  Consistent with the Constitution's protection of liberty, federal law favors release, unless the defendant presents a flight risk or a danger to himself or others.  Congress has declared that certain offenses carry a rebuttable presumption of dangerousness, and Mr. Buchanan faces charges (for distribution and possession of controlled substances with the intent to distribute) giving rise to such a presumption.  Even then, given the centrality of liberty to our constitutional order and the presumption of innocence, the United States must prove by clear and convincing evidence that detention is warranted based on danger to the community.

Here, like the Magistrate Judge, the Court finds that Mr. Buchanan has rebutted the presumption in favor of detention with sufficient evidence.  Still, Congress's judgment retains evidentiary force, and that presumption makes this case as presently postured a close one.  Detention works a great disadvantage to

Mr. Buchanan as he prepares his defense and attempts to show the Court that an appropriate sentence might be something less than what the guidelines ultimately recommend (assuming any conviction does not carry a mandatory minimum sentence).  Still, because of the substantial likelihood that the evidence will tie Mr. Buchanan to a drug overdose death, the Court finds that the United States presents clear and convincing evidence that Mr. Buchanan poses a danger to the community.  Therefore, the law requires detention in this case—at least until it becomes clear whether the facts will support more serious charges arising from the death.  For these reasons as more fully explained below, the Court **REVOKES** the order of the Magistrate Judge setting bond and **ORDERS** the detention of Ronald Buchanan without prejudice to reconsideration if and when the facts so warrant.

## STATEMENT OF FACTS

Mr. Buchanan was arrested on April 7, 2021 on a criminal complaint charging an offense under the Controlled Substances Act in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  The complaint (ECF No. 1) includes an affidavit from a Strongsville police officer assigned to a Drug Enforcement Agency task force.  (ECF No. 1-1).  The affiant sets forth facts establishing his belief that there is probable cause Mr. Buchanan committed the charged offense.  (ECF No. 1-1, ¶ 5, PageID #2.)  He describes the circumstances leading to the arrest of Mr. Buchanan.

Those events began on April 6, 2017, when the affiant responded to a call of a fatal overdose at an apartment in Strongsville.  (*Id.*)  As a police officer in Strongsville, the affiant says he had prior dealings with the decedent.  (*Id.*, ¶ 6, PageID #3.)  In decedent's apartment, investigators located a cut straw with residue

2

of an unknown white powder, three and one half small round pills with the number 30 on one side and the letter M on the other, which affiant recognizes as "fentanyl pressed pill[s]," and Xanax pills.  (*Id.*, ¶¶ 7 & 8.)

The decedent's girlfriend advised the officer that the day before the decedent took a Percocet pill for which he did not have a prescription.  (*Id.*)  She helped him access decedent's cell phone.  (*Id.*, ¶ 6.)  Decedent had a text conversation with a contact identified as "Ron Grave Yard," in which the two discussed meeting and obtaining "4," apparently referencing the number of fentanyl pressed pills.  (*Id.*, ¶ 9.)  Based on searches of law-enforcement databases, affiant identified Defendant as Ron Grave Yard.  (*Id.*, ¶ 10, PageID #4.)  Additionally, the decedent's phone showed a recent search for a location near Defendant's home address.  (*Id.*, ¶ 11.)

On the evening of April 6, 2021, the officer sent a text from the decedent's phone to Ron Grave Yard, inquiring about obtaining four more pills.  (*Id.*, ¶ 12.)  In a follow-up text conversation the following morning, Ron Grave Yard states that he "just left court" and arranged to meet to deliver more pills.  (*Id.*)  In response to pressure to do the deal, Ron Grave Yard suggested getting the pills from his father instead.  (*Id.*, PageID #5.)  When agents arranged to meet Ron Grave Yard, they arrived in a blue SUV, and the affiant called him posing as the decedent.  (*Id.*, ¶¶ 15–16, PageID 5–6.)  When Defendant approached the agents in the vehicle, they arrested him.  (*Id.*, ¶ 16, PageID #6.)  Defendant was arrested with the telephone with which the affiant was texting to arrange the transaction—the same phone used to arrange the sale with the decedent.  (*Id.*, ¶ 17.)  When interviewed, Defendant

3

admitted to the sale involving the decedent and that there was a firearm at his home address.  (*Id.*)

## STATEMENT OF THE CASE

On April 7, 2021, the United States filed a criminal complaint charging Mr. Buchanan with distribution of controlled substances in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  (ECF No. 1.)  He was arrested that day, and Mr. Buchanan appeared in federal court by video after his arrest.  Pending a hearing, he was ordered detained.  (*See* Minutes, Apr. 8, 2021.)  The Magistrate Judge held a detention hearing on April 14, 2021.

### A.    The Detention Hearing

The United States proffered the pretrial services report and the affidavit accompanying the criminal complaint.  (ECF No. 15, PageID #69.)  It did not present any witnesses.  (*Id.*)  Defendant did not present witnesses either, but based on the information in the criminal complaint and the pretrial services report proffered that Mr. Buchanan lives with his parents and four-year-old daughter.  (*Id.*, PageID #69–70.)  Though unemployed due to a recent disability, Mr. Buchanan has a commercial driver's license and was employed until his injury a few months ago.  (*Id.*, PageID #70.)

In argument, the United States acknowledged certain facts favoring Mr. Buchanan: he is a lifelong resident of the area, he is not a flight risk, and he has no prior convictions.  (*Id.*)  On the other hand, the United States urged detention based on the sale of fentanyl pills to someone who passed away before arranging a second transaction with the officer.  (*Id.*)  In the controlled buy, Mr. Buchanan left an

4

arraignment in State court on a gun charge to complete the transaction. (*Id.*, PageID #71.) According to the United States, he admitted to possessing a firearm, having fentanyl, and selling drugs while on bond. (*Id.*) Finally, the United States pointed out that the home to which Mr. Buchanan would return if released pending trial is the same one from which he was selling drugs. (*Id.*, PageID #71.)

Defendant argued Mr. Buchanan is a 23-year-old single father supporting his four-year-old child and his parents. (*Id.*, PageID #73–74.) He has no criminal record, although he has a pending case in State court. (*Id.*) Additionally, Defendant maintained that the amount of drugs involved was not excessive—four pills in the controlled buy plus another four pills at the decedent's apartment, of which investigators recovered three and one half. (*Id.*, PageID #74–75.)

On this last point, the Magistrate Judge questioned counsel regarding whether half a Percocet pill laced with fentanyl would be enough to cause death. (*Id.*, PageID #75–76.) Based on the transcript, this exchange showed the Magistrate Judge's skepticism that the number of pills involved in the case was significant. Additionally, although the United States represented that it was awaiting autopsy results to determine whether to add a charge relating to the death, the Magistrate Judge declined to consider the potential for a mandatory 20-year sentence. (*Id.*, PageID #72.) "It's not in play. It's not a charge here so I'm not going to consider it." (*Id.*) The Magistrate Judge took the matter under advisement. (*Id.*, PageID #77.)

## B. The Magistrate Judge's Ruling

On April 21, 2021, the Magistrate Judge conducted a hearing and announced his ruling. (ECF No. 14.) "The court has determined that bond will be appropriate."

5

(*Id.*, PageID #52.)  Then, the Magistrate Judge set the conditions of bond.  (*Id.*, PageID #53–55.)  On oral motion of the United States, the Magistrate Judge stayed the ruling (*id.*, PageID #55–56), and the United States appealed (ECF No. 12).  Defendant responded, arguing in support of the Magistrate Judge's ruling.  (ECF No. 13.)  Summarizing the facts, Defendant maintains "[t]his case is solely about a sale of four (4) pills, an attempt to sell four (4) pills and the presence of a gun at Defendant's residence when a search warrant was executed."  (*Id.*, PageID #35.)  Additionally, Defendant points out that he cooperated with authorities when arrested.  (*Id.*)

### C.    Appeal by the United States

The Court promptly held a hearing on this appeal on April 29, 2021.  At the hearing, the United States proffered five exhibits:  (1) the criminal complaint; (2) the affidavit supporting the criminal complaint; (3) its motion to stay the Magistrate Judge's release order; (4) the pretrial services report; and (5) a report dated April 9, 2021 of the investigation involving Mr. Buchanan.  That report details the interview agents conducted with Mr. Buchanan on April 9, 2021.  According to the report, when confronted with information relating to the decedent and the controlled transaction, Mr. Buchanan agreed to cooperate to spare his father from involvement in the case.  Then, according to the report, Mr. Buchanan admitted selling pills to the decedent and stated that he had about twenty more at his house.

The United States then presented the testimony of Jason Glover, the Strongsville Police officer assigned to the DEA task force.  He is familiar with the investigation and arrest of Mr. Buchanan.  In his testimony, the officer confirmed the

facts as presented above.  Beyond the facts outlined already, the officer testified that a search conducted pursuant to the warrant turned up a baggie with 19 blue pills bearing the same stamp and markings (M30) as the ones found at the decedent's apartment.  He testified that the pills were designed to look like oxycodone but contained fentanyl.  The search also recovered some heroin.  As of the date of the hearing, investigators were waiting on information to confirm to whom the gun at Mr. Buchanan's house belonged and results of toxicology tests and the autopsy to determine whether the facts will support bringing more serious charges carrying a mandatory minimum sentence of 20 years.  Without a basis for those more serious charges, the United States concedes that the offense would not contain a mandatory minimum sentence of imprisonment.

On cross-examination, the officer conceded that based on the status of the case today Mr. Buchanan is tied to roughly two dozen pills containing fentanyl worth about $600.  Defendant proffered no information beyond that already discussed.

Following arguments by the parties, the Court took the matter under advisement at the conclusion of the hearing.  Although Mr. Buchanan and his counsel appeared by video, the Court notes that that fact did not impede Mr. Buchanan's ability to proffer evidence, cross-examine the witness the United States presented, or argue to the Court, and address the Court's questions.  Nor did the remote appearance of Mr. Buchanan and his counsel affect the Court's view of the information presented.  The day after the hearing, a grand jury returned an indictment against Mr. Buchanan, charging him with one count of violations of the Controlled

Substances Act and one count of possessing a firearm while under indictment.  (ECF No. 19.)

## STANDARD OF REVIEW

District courts review a magistrate judge's release or detention order de novo. *United States v. Tripplett*, No. 1:19CR700, 2020 WL 6702118, at *1 (N.D. Ohio Nov. 13, 2020) (citing *United States v. Alexander*, 742 F. Supp. 421, 423 (N.D. Ohio 1990)). On review, the district court engages "in the same analysis, with the same options, under § 3142 as the magistrate judge."  *United States v. Yamini*, 91 F. Supp. 2d 1125 (S.D. Ohio 2000) (citing *United States v. Maull*, 773 F.2d 1479, 1482 (8th Cir. 1985)).

## ANALYSIS

Under the Bail Reform Act, "a defendant may be detained pending trial only if a judicial officer 'finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]'"  *United States v. Stone*, 608 F.3d 939, 947 (6th Cir. 2010) (quoting 18 U.S.C. § 3142(e)).

Where, as here, "there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act," a rebuttable presumption arises that no condition or combination of conditions on release will assure the defendant's appearance or the safety of the community.  18 U.S.C. § 3142(e)(3)(A).  The parties do not dispute this presumption initially applies.  To rebut this presumption, the defendant must produce some "evidence that he does not pose a danger to the

community or a risk of flight." *Stone*, 608 F.3d at 945 (quoting *United States v.*
*Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)).  This is not a heavy burden.  *Id.*

"Even where a defendant satisfies his burden of production, however, 'the
presumption favoring detention does not disappear entirely, but remains a factor to
be considered among those weighed by the district court.'"  *Id.* (quoting *Mercedes*, 254
F.3d at 436).  The other factors a district court considers are:  (1) the nature and
circumstances of the offense, including whether the offense is a controlled substances
offense; (2) the weight of the evidence against the defendant; (3) the history and
characteristics of the defendant; and (4) the nature and seriousness of the danger to
any person or the community that the defendant's release would pose.  18 U.S.C.
§ 3142(g)(1)–(4).

The United States retains the burden of persuasion.  *Stone*, 608 F.3d at 845
(citing *Mercedes*, 254 F.3d at 436).  It must "prove that no conditions of release can
assure the defendant will appear and to assure the safety of the community."  *Id.* at
946.  Courts look to the factors enumerated in 18 U.S.C. § 3142(g) when determining
whether the United States has carried its burden of persuasion.  In meeting this
burden, the government may proceed by proffer or hearsay.  *Stone*, 608 F.3d at
948–49 (citation omitted).  Consideration of these factors does not modify or limit the
presumption of innocence.  *Id.* at 946 (citing 18 U.S.C. § 3142(j)).

As to risk of flight, the United States must carry its burden by a preponderance
of the evidence.  *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004).  With
respect to dangerousness, however, the United States must present clear and

9

convincing evidence to prevail. *Stone,* 608 F.3d at 946 (citing 18 U.S.C. § 3142(f)(2)(B)). Clear and convincing evidence requires a firm belief or abiding conviction that what is alleged is highly probable. *Kelley v. Apria Healthcare, LLC,* 232 F. Supp. 3d 983, 1003 (E.D. Tenn. 2017); *Automotive Techs. Int'l., Inc. v. Delphi Corp.,* 776 F. Supp. 2d 469, 477 (E.D. Mich. 2011); *Cooney v. Bob Evans Farms, Inc.,* 645 F. Supp. 2d 620, 629 (E.D. Mich. 2009); *In re Bowling,* 314 B.R. 127, 135 (S.D. Ohio 2004).

## I.      Whether the Presumption of Detention Arises

Under 18 U.S.C. § 3142(e)(3), the United States bears the burden to show probable cause that Mr. Buchanan committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act. *Stone,* 608 F.3d at 945. A grand jury indictment establishes probable cause. *Id.* Even when this case proceeded by criminal complaint, however, the record establishes and the Court finds the requisite probable cause exists, giving rise to the presumption of detention.

## II.     Defendant's Burden of Production to Rebut the Presumption

Mr. Buchanan has produced some evidence tending to demonstrate that he is not a flight risk or a danger to the community. Regarding the former, Mr. Buchanan lives with his parents in Cleveland, Ohio, and he supports them and his four-year-old daughter as a single parent. He has spent his life in the area. Further, Defendant maintains that the offense involves a small number of pills and that Mr. Buchanan cooperated with authorities upon his arrest. On the other hand, Mr. Buchanan faces other pending charges and a potentially serious sentence in this case, if convicted,

particularly if evidence develops connected Mr. Buchanan to the overdose death. These facts suggest there is some risk of non-appearance, as the pretrial services report notes. However, the burden to rebut the presumption is not a heavy one. Based on the overall facts in the record, Mr. Buchanan puts forward sufficient evidence to satisfy his burden of production to rebut the presumption of detention.

## III.    The United States' Burden of Persuasion

Next, the Court weighs the factors in Section 3142(g) along with the presumption of detention imposed by Congress, which retains evidentiary force, to determine whether the United States has met its burden of persuasion that Mr. Buchanan should be detained. To merit an order of detention, the United States must prove either (1) by a preponderance of the evidence, Mr. Buchanan poses a risk of flight; or (2) by clear and convincing evidence, he poses a risk to the safety of others and the community.

Here, the record as it presently stands does not support a finding that Mr. Beard poses a risk of flight, given his ties to the community and his history of appearances in other proceedings with only minor issues at most. Therefore, the inquiry turns on whether the United States can carry its burden by clear and convincing evidence that there are conditions of release that will assure the safety of the community. In making this assessment, the Court considers each of the factors in Section 3142(g).

### III.A. Nature and Circumstances of the Offense Charged

This factor considers whether the offense charged is a crime of violence, has a minor victim, or involves a controlled substance. 18 U.S.C. § 3142(g)(1). There is no

11

dispute the offenses charged involve a controlled substance.  On its face, this statutory factor does not distinguish between drug offenses involving small or large quantities.  This factor weighs in favor of detention.

### III.B. Weight of the Evidence

This factor considers the likelihood the defendant will pose a risk of flight or danger to the community and is not a pretrial determination of guilt.  *Stone*, 608 F.3d at 948.  Based on the record before the Court, the evidence, though involving a comparatively small number of pills, includes Defendant's alleged admissions. Further, even setting those aside, as an evidentiary matter the surveillance resulting in Defendant's arrest presents at least probable cause and carries considerable weight in this analysis.  Moreover, though presented by way of proffer and including hearsay, which is permissible at this stage of the proceedings, the facts are not materially in dispute.   Primarily, Defendant contests their weight in the considerations entering into the detention decision.

In this regard, the record supports a strong inference that the decedent overdosed as a result of ingesting fentanyl Mr. Buchanan supplied, using pills created to be something other than what they were.  Instead of oxycodone, the pills contained fentanyl, which is considerably more potent.  Unfortunately, that fact likely played a role in the decedent's death.  This factor, at least for now, tips the scale toward detention.

### III.C. History and Characteristics of the Person

The history and characteristics of a defendant include "the person's character, physical and mental condition, family ties, employment, financial resources, length

of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A).  Additionally, they include whether the defendant was on probation or parole at the time he committed the offense.  *Id*. at § 3142(g)(3)(B).  Mr. Buchanan has many personal ties to the community throughout his lifelong residence in the area.  He is the single father of a young child and supports his parents.  He has no criminal record, and the other considerations in Section 3142(g)(3)(B) generally weigh in his favor.  These considerations favor release.

But the Court must also consider the record regarding court appearances. Here, the record shows he was released on bond on State charges at the time. Although he appeared at his arraignment and was released on bond pending trial on charges in State court, the record shows that the text messages resulting in the controlled transaction leading to Mr. Buchanan's arrest occurred as he was leaving his arraignment in State court.  That fact provides strong evidence that Mr. Buchanan will likely disregard any condition of release.  Sometimes, a person without a criminal record may need to face the consequences of an arrest before being scared straight.  That has not happened here.  And there is no reason to believe it would now.  In the Court's view, this consideration weighs heavily in the analysis and favors detention.

### III.D. Nature and Seriousness of the Danger Release Poses

Considering the record as a whole, the Court finds it likely that Mr. Buchanan will continue to engage in criminal conduct, including selling drugs.  To be sure, the

quantity of drugs in transactions involving Mr. Buchanan is not that high. Accordingly, this case presents the legal question of the meaning of the "danger" the statute references when directing the Court to consider the nature and seriousness of the danger release poses.  18 U.S.C. § 3142(g)(3)(B).

At one level, the term "dangerous" implies some risk of physical injury or harm. For example, one dictionary defines the term as meaning "involving possible injury, pain, harm, or loss" or "able or likely to inflict injury or harm."  *Merriam-Webster Online Dictionary,*  https://www.merriam-webster.com/dictionary/dangerous  (last visited Apr. 28, 2021).  But the term is not strictly limited to such a meaning—harm need not be violent or even tangible.  Indeed, "[t]he purchase and sale of narcotics is an inherently dangerous activity" and poses a danger to the community.  *United States v. Bethea*, 763 F. Supp. 2d 50, 54 (D.D.C. 2011).  For this reason, the Sixth Circuit "routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without any indication that the defendant has engaged in violence."  *Stone*, 608 F.3d at 947 n.6 (collecting cases).

Against this legal background, none of which takes into account whether the evidence ties Mr. Buchanan to the overdose death, this case raises some challenging questions regarding the type of danger Mr. Buchanan poses to the community. Reasonable jurists may disagree, but in the Court's view Congress has declared that drug activity of the sort involved in the charges implicating Mr. Buchanan constitutes such a danger.  Further, the drug activity at issue also meets the legal definition of dangerousness that the Sixth Circuit would likely apply.

14

## RELEASE CONDITIONS AND BURDEN OF PROOF

Section 3142(c)(1)(B) provides that, if a judicial officer determines the pretrial release of a defendant will endanger the safety of the community, the court must use "the least restrictive further condition, or combination of conditions" to reasonably assure the safety of the community.  The statute goes on to provide an illustrative list of the types of conditions that the court may use to effect this purpose.  18 U.S.C. § 3142(c)(1)(B)(i)–(xiv).  Because Defendant has rebutted the presumption in favor of detention, some question remains how to read the evidentiary force the presumption of detention retains under Section 3142(e)(3) together with the factors under Section 3142(g) in light of the directive of the Bail Reform Act in Section 3142(b) and (c) that defendants are to be released subject to the provisions of Section 3142(c)(1)(B) discussed above.  And these statutory commands arise against the backdrop of the requirement that the United States carry its burden of persuasion by clear and convincing evidence.

In this case, the Court determines that less restrictive conditions to ensure the safety of the community will not reasonably do so and that the United States has carried its burden by clear and convincing evidence for two reasons.

*First*, Defendant would live at his home with his parents and his daughter— the same residence out of which the record shows he has engaged in drug transactions.  Limiting Mr. Buchanan's cell phone usage, even if permissible, is not practicable because of the many sophisticated means for communicating electronically that make enforcing such a condition quite difficult, if not impossible—

15

in the Court's view, such a condition would be necessary given Mr. Buchanan's use of cell phones to transact the drug transactions at issue.

*Second*, the record shows that Mr. Buchanan has not complied with other conditions of release pending trial, and there is no reason to believe things will be different now. Significantly, the second transaction resulting in Mr. Buchanan's arrest occurred as he left State court. Such conduct shows by clear and convincing evidence that no conditions of release will protect the community against the danger Mr. Buchanan poses while awaiting trial, and leaves the Court with a firm belief that it is highly probable Mr. Buchanan will, if released, engage in criminal activity and pose a danger to the safety of the community.

Finally, the Court notes that its analysis assumes that the fentanyl pills caused or contributed to the decedent's death. If the evidence fails to bear this assumption out, then the Court would encourage Defendant to raise the issue of detention and release pending trial again at the appropriate time. *See* 18 U.S.C. § 3142(f). In that event, the balancing of the factors under Section 3142(g) may or may not result in the same determination.

## CONCLUSION

Based on the record before the Court, and the evidentiary force the congressional presumption in favor of detention retains, the Court determines that no condition or combination of conditions will reasonably assure the safety of the community. Therefore, the Court orders the detention of Mr. Buchanan at least for now. In doing so, the Court recognizes that doing so impinges on Mr. Buchanan's liberty and works a hardship on his family and on his ability to participate in his

defense and demonstrate that he can comply with terms of supervision while awaiting trial.  However, the statute and the record before the Court compel such a result. For all the foregoing reasons, the Court **REVOKES** the order of the Magistrate Judge setting bond and **ORDERS** the detention of Ronald Buchanan without prejudice to reconsideration if the evidence fails to connect Mr. Buchanan to the overdose death.

**SO ORDERED.**

Dated:  May 5 2021

J. Philip Calabrese
United States District Judge
Northern District of Ohio

17